The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TROUT UNLIMITED, et al.,

    Plaintiffs,

  and

BUILDING INDUSTRY ASSOCIATION OF WASHINGTON,

    Intervenor-Plaintiffs,

  v.

D. ROBERT LOHN, in his official capacity as Regional Administrator of NMFS Northwest Regional Office, and NATIONAL MARINE FISHERIES SERVICE,

    Defendants.

CASE NO. C05-1128C

ORDER

I.    INTRODUCTION

This matter has come before the Court on Plaintiffs' motion to compel completion of the administrative record (Dkt. No. 33). Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court hereby GRANTS the motion in part.

ORDER - 1

## II. BACKGROUND

Plaintiffs brought this action to challenge the National Marine Fisheries Service's ("NMFS") promulgation of its Policy on the Consideration of Hatchery-Origin Fish in Endangered Species Act Listing Determinations for Pacific Salmon and Steelhead ("Hatchery Listing Policy" and "HLP"), 70 Fed. Reg. 37,204 (June 28, 2005) (to be codified at 50 C.F.R. pts. 223 & 224).

Defendants produced 613 documents totaling more than 8,000 pages, and including: (1) a 2002 preliminary draft of the proposed policy circulated for co-manager review and sixteen documents containing all comments thereto from state and local governments, the federal government, and private parties; (2) the Federal Register notice of the June 2004 Proposed HLP and comments thereto; (3) the Federal Register notice of the final 2005 HLP; (4) four requested peer reviews; (5) about 200 comments received from the public; (6) about ten written comments received during public hearings; and (7) technical analysis, reports, and scientific literature considered by NMFS during the decision-making process. (Opp'n 3–4.) In addition, in response to Plaintiffs' motion, Defendants determined that an additional thirty-three documents were responsive, but withheld production of twenty-two of them as protected by the deliberative process privilege.

Plaintiffs now challenge Defendants' designation of the record as well as Defendants' assertion of the deliberative process privilege.

## III. ANALYSIS

Under the Administrative Procedure Act ("APA"), a court reviewing an agency action must consider "the full administrative record before the [decisionmaker] at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). "The 'whole' administrative record . . . consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary

ORDER - 2

to the agency's position." *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation omitted). Thus, although generally it is the agency that compiles and designates the full administrative record, *see Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 56–57 (D.D.C. 2003), "[t]he whole administrative record . . . is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Id*. Thus, supplementation of the record produced may still result only in the production of the "whole administrative record," rather than in the production of extrinsic data that could put the Court in the impermissible position of proceeding *de novo* rather than with the proper deference to agency processes, expertise, and decision-making. *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

In the instant case, Plaintiffs challenge both Defendants' methodology for determining the contents of the administrative record in general and Defendants' exclusion of three specific scientific reports.

  A. *Designation of the record*

In the present case, Defendants do not dispute that the administrative record in this case was compiled according to the guidelines set forth in NMFS POLICY DIRECTIVE 30-123, ADMINISTRATIVE RECORDS GUIDELINES (March 2005) ("AR DIRECTIVE"). In relevant part, the AR Directive states as follows:

> NOAA Fisheries keeps records for three separate purposes. First, the agency must maintain records to protect the public interest in government documents and materials. Second, the agency for its own business purposes, and occasionally for public viewing, keeps a docket of information relating to a specific decision. Third, when a NOAA Fisheries decision is challenged in court, the agency must produce a subset of these documents to the court.
>
> . . . .
>
> The term "administrative record" can be used to mean a compilation of documents that the agency maintains to track its decision-making process, or it can mean the subset of those documents that is compiled and produced to a court to demonstrate the decision-making process and the basis for a final agency decision. The Guidelines will use "administrative record" (AR) to refer to the record produced for litigation, and "docket" to describe the

ORDER - 3

>   record maintained by the agency to document the development of a specific agency decision.
>
>   . . . .
>
>   [T]he agency should present an AR that demonstrates compliance with procedural requirements and the full rationale for the agency's decision.
>
>   . . . .
>
>   The AR must . . . explain and rationally support the agency's decisions . . . . Particularly, the AR should document consideration of opposing points of view, and provide a thorough explanation as to why the preferred course of action was adopted.
>
>   . . . .
>
>   The following two threshold principles can be used in evaluating whether to exclude a document from an AR: (1) relevance; and (2) significance.
>
>   . . . .
>
>   A document is significant if it bears directly on the substantive issues examined by the agency while undertaking its decision-making process relating to the final action. If a document contains information and deliberations relied on by the decision-maker (or incorporated by reference in documents relied on by the decision-maker), then the document is significant. Significant documents are a subset of relevant documents.

AR DIRECTIVE, *passim*. The directive further notes that a proposed AR should be reviewed by an NOAA case attorney, who will review the file to see if additional documents should be included or if irrelevant, insignificant documents should be removed. *ID*. at 9.

Defendants' concession that the AR DIRECTIVE guided the compilation of the administrative record in this case, and the above language, are sufficient to make the necessary prima facie showing that there is "material in the agency's possession indicative of . . . an incomplete record." *Amfac Resorts, LLC v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001).

The language of the AR Directive, particularly with respect to its explanation of what types of documents are "significant" for the purposes of inclusion in an administrative record, is permissive and non-exclusive (*i.e.*, suggesting certain categories of documents that are "significant" rather than defining the boundaries). Plaintiffs' motion suggests that the language may have been interpreted as excluding documents that did not (1) "bear directly on the substantive issues examined by the agency", or (2) contain

ORDER - 4

information and deliberations relied on by the decision-maker.  Defendants' response sheds no light on how Defendants interpreted and implemented the directive's explanation of "significance."  If Defendants interpreted the directive as suggested by Plaintiffs (*i.e.*, omitting documents that did not "bear directly" on the substantive issues and/or that did not "contain information and deliberations relied on by the decision-maker"), the administrative record thus compiled could be legally deficient if it omits documents that are "significant", yet do not fit into the two specifically defined categories contained in the directive.

The term "significant" is not a term that has developed a special meaning in the context of development of an administrative record.  Therefore, the agency's use of "significant" does not expressly run counter to any established determinations of what documents are "significant" in the context of producing an administrative record.  However, the agency's explanation of "significant," coupled with its directive not to produce documents not deemed "significant" as defined by the guidelines, does run counter to the caselaw.  An agency's action may be arbitrary and capricious if it can be shown that "the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983).  Thus, documents that were *not* relied upon by a decisionmaker, or evidence relating to such documents and their non-consideration, have been held to be necessary elements of an administrative record.  Furthermore, even within the universe of documents considered by the decision-maker, because the Ninth Circuit has held that a complete record includes all materials directly and indirectly considered by the decisionmaker, *Thompson*, 885 F.2d at 555, Defendants' limitation of "significant" documents to those "relied" on by a decisionmaker appears to be considerably narrower than permitted by this circuit.

ORDER - 5

For the foregoing reasons, the Court orders that Defendants re-assess the process by which the administrative record in this case was compiled and ensure that that process fully complies with the standards as developed through the applicable caselaw discussed above. If, after this re-assessment, Defendants determine that the record complies with these requirements without regard to the AR DIRECTIVE, Defendants shall file an amended certification to that effect. Defendants shall also produce for Plaintiffs' inspection a copy of the applicable "docket" as created pursuant to the AR DIRECTIVE. If Defendants determine that the caselaw standard requires that the administrative record be supplemented, Defendants are directed to supplement the record as necessary.

### B. *Specific scientific reports*

Plaintiffs' motion challenged Defendants' omission of three scientific reports. Defendants have since conceded that two of the three reports are properly part of the record, but argue that the third, the Hey Report is not. The Hey Report "summarizes a scientists' workshop about current thoughts on using available data to identify 'conservation units' of Pacific salmon." (Fed. Defs.' Opp'n 4.) According to Defendants, "NMFS intends to use these ideas in considering whether to revise its methodology and data analysis used in identifying evolutionarily significant units (ESUs) of salmon , but NMFS did not intend for it to play any part in adopting the 2005 HLP." (*Id.*) Defendants also argue that because the Hey Report was submitted to the Northwest region of NMFS on May 16, 2005, one day before the regional office sent its draft of the final 2005 Hatchery Listing Policy to Washington, D.C., "[i]t stands to reason that the report . . . was not a basis of the decisionmaker's action." (*Id.* 5.)

With respect to Defendants' second argument, Plaintiffs point out that the Hey Report itself was the written product of scientific panel discussions and a public symposium that took place at the NMFS Northwest Regional office on March 29–31, 2005. Therefore, the opinions memorialized in the written report were actually made known to NMFS a full one-and-a-half months before the written report was

ORDER - 6

submitted. This is ample time for the opinions contained in the report to have had an effect on Defendants' final Hatchery Listing Policy, or, in the alternative, for Defendants to decide that the opinions should not affect the final policy. Thus the fact that the written report itself was submitted to the regional office only one day prior to the office's submission of its version of the final Hatchery Listing Policy is immaterial and does not constitute a valid reason to exclude the report.

Defendants' first argument, that the Hey Report was not "intended" to play any part in NMFS's adoption of the 2005 Hatchery Listing Policy (and that it was not a "basis" for the decisionmaker's action) is similarly inapposite. As the Court has noted above, if it can be shown that "the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise," *State Farm Mut. Ins. Co.*, 463 U.S. at 43, the agency's action could be deemed arbitrary and capricious. If the Hey Report or the opinions contained therein appear that they should have been considered by NMFS and taken into account in the 2005 Hatchery Listing Policy, the fact that they *weren't* could cause the agency's adoption of the policy to be held to be arbitrary and capricious.

For these reasons, the Court finds that the Hey Report should be included in the administrative record.

### C.     *Deliberative process privilege*

Defendants' supplemented administrative record included a log reflecting that twenty-two of the thirty-five documents that had been deemed properly part of the administrative record had been withheld as privileged. Plaintiffs do not challenge the single assertion of attorney-client privilege, but challenge Defendants' assertion of the deliberative process privilege with respect to the remaining twenty-one documents withheld.

ORDER – 7

1     "The deliberative process privilege shields from disclosure intra-governmental communications
2 relating to matters of law or policy." *Greenpeace v. NMFS*, 198 F.R.D. 540, 543 (W.D. Wash. 2000)
3 (citing *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116–17 (9th Cir. 1988)).  However, the
4 privilege does not protect documents pertaining to determinations of science or fact. *Id.* at 543–44. The
5 analysis developed by the Ninth Circuit in *National Wildlife Federation* inquires into the functional
6 purpose of the document in question.  Thus, simple assessments of whether a document contains "factual"
7 rather than "deliberative" material are neither sufficient nor apposite. *Nat'l Wildlife Fed'n*, 861 F.2d at
8 1119 (stating "the scope of the deliberative process privilege should not turn on whether we label the
9 contents of a document 'factual' as opposed to 'deliberative').  Rather, a court must determine whether
10 disclosure of the document would impermissibly "reveal the mental processes of decisionmakers." *Id.*

11     The Court finds that the analysis necessary to determine whether Defendants properly asserted the
12 deliberative process privilege requires that the Court conduct an *in camera* review of the twenty-one
13 documents withheld from the administrative record.  The *in camera* review will permit the Court to
14 determine whether the documents are better characterized as contributing to a determination of fact or to a
15 determination of law or policy and whether their disclosure will reveal NMFS's mental processes.
16 Accordingly, the Court directs Defendants to produce the twenty-one documents withheld pursuant to the
17 deliberative process privilege to the Court for *in camera* review.  Defendants are to produce an unredacted
18 version and a proposed redacted version of the documents.  The portions proposed to be redacted should
19 indicate "'precise and certain' reasons for preserving the confidentiality of the . . . information."
20 *Greenpeace*, 198 F.R.D. at 544.

21     In addition, because the parties' briefing on this issue was relatively informal, the Court directs the
22 parties to submit additional briefing regarding the applicability of the deliberative process privilege to this
23
24

ORDER - 8

1  case.  In addition, the parties are to discuss whether the definition of "distinct population segment" should
2  be characterized as a scientific issue or a policy issue.
3  IV.   CONCLUSION
4       In accordance with the foregoing, Plaintiffs' motion to compel is GRANTED in part.  Defendants
5  shall add the Hey Report to the administrative record.  With respect to documents other than the twenty-one
6  withheld pursuant to the deliberative process privilege, the parties are directed to agree to a schedule by
7  which Defendants shall either certify that the administrative record is complete under the caselaw or
8  produce the necessary supplemental documents.
9       With respect to the deliberative process privilege issue, the parties are directed to agree to a
10 mutually agreeable briefing schedule that will accommodate simultaneous cross-briefing of no more than
11 seven pages each and simultaneous cross-replies of no more than five pages each.
12       The parties are to notify the Court within five judicial days of the date of this Order of their agreed-
13 upon schedules.
14       Finally, Defendants are directed to produce for *in camera* review two versions of the documents
15 withheld (as described above) within ten judicial days of the date of this Order.
16       SO ORDERED this 4th day of May, 2006.

                                    UNITED STATES DISTRICT JUDGE

ORDER - 9